Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Michael T. Mason | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 2818 | **DATE** | 7/10/2003 |
| **CASE TITLE** | Wych Jr. vs. Barnhart | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due _____. Reply to answer brief due _____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]  For the reasons stated in the attached memorandum opinion and order, defendant's motion for summary judgment [19-1] is granted and plaintiff's motion to reverse the final decision of the Commissioner of Social Security [16-1] is denied. All other motions and deadlines are stricken as moot.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 3 | Document Number |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | JUL 11 2003 | |
| | Notified counsel by telephone. | | date docketed | 21 |
| | Docketing to mail notices. | | docketing deputy initials | |
| ✓ | Mail AO 450 form. | U.S. DISTRICT COURT | 7/10/2003 | |
| | Copy to judge/magistrate judge. | | date mailed notice | |
| KF | courtroom deputy's initials | Date/time received in central Clerk's Office | KF mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GEORGE WYCH, JR. ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 02 C 2818 |
| v. ) | |
| ) | Mag. Judge Michael T. Mason |
| JO ANNE B. BARNHART, Acting ) | |
| Commissioner of Social Security ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Michael T. Mason, United States Magistrate Judge:

The plaintiff, George Wych, Jr. has brought a motion to reverse the final decision of the Commissioner of Social Security ("Commissioner"), who denied Wych's claim for disability insurance benefits ("DIB") under the Social Security Act ("Act"), 42U.S.C.§§416(i), 423(d). Wych now appeals that decision in federal court as permitted by Section 405(g) and Section 1383(c)(3), which grant federal courts the power to review the Commissioner's final decisions. Wych moves to reverse the final decision of the Commissioner and the defendant moves for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.

### Procedural History

Wych filed for DIB on April, 19, 2000, asking for a period of disability from April 5, 1993 to the present. (R. 54-56, 85). Wych's claim was denied initially and on reconsideration. (R. 31-42). On August 7, 2001, Wych, represented by counsel, testified in a disability hearing before Administrative Law Judge ("ALJ") Richard J. Boyle regarding

the denial of his claim. (R. 348-415). At the request of the ALJ, a medical expert testified as well. On November 26, 2001, the ALJ issued a written opinion denying plaintiff's claim. (R. 12-22). In his opinion, ALJ Boyle found that Wych was capable of performing a significant number of medium, unskilled jobs. (R. 15-22). On January, 8, 2002, Wych filed a timely request for the Appeals Council to review the ALJ's decision. (R. 7). The Appeals Council denied Wych's request for review on February, 26, 2002. (R. 5). Thus, the decision of ALJ Boyle became the final decision of the Commissioner of Social Security. See Zurawski v. Halter, 245 F.3d 881 (7th Cir. 2001); Reg. §416.1481.

### Plaintiff's Testimony

At the time of the hearing before the ALJ, Wych was a forty-eight year old male who has the equivalent of a high school education, and who served in the military. (R. 353-60). From 1988 to 1993 Wych worked as a warehouse manager, salesperson, and production manager. (R. 353-60). At these jobs, Wych supervised other employees, was responsible for hiring and firing, and administered performance reviews. (Id.). From 1993 to 1998 Wych managed an apartment complex with his wife. (R. 360-63, 382, 401). Wych performed various maintenance work including painting, cleaning up the lawn, and repairing broken items in apartments. (Id.). Wych testified that he worked from 6 to 12 hours a day. (R. 383). He did not receive a salary and did not have a regular schedule. (R. 383).

### Plaintiff's Medical Examinations

In October, 1984, Wych received treatment at Elmhurst Memorial Hospital for some type of heart attack. (R. 371). The heart attack, however, was not documented in any

2

record. (Id.).

In January, 1991, Wych presented to the Elmhurst Memorial Hospital Emergency Room with chest pain and shortness of breath. Diagnostic testing was unremarkable. Wych showed progressive improvement and was discharged that day. (R. 142-43).

In November, 1992 and March, 1993, Linas Smulkstys, M. D., a family physician, opined Wych was disabled due to cardiomyopathy. (R. 218-19). Dr. Smulkstys clarified that this meant Wych was unable to work 60 hours per week as he had done previously. (R. 219).

In June, 1993, Myron E. Berman, M.D., a consultative physician for the Commissioner, opined Wych was unemployable due to Wych's reports of a history of heart attack and cardiac conditions. (R. 165).

In November, 1993, Wych sought treatment at the emergency room of the Glenoaks Medical Center for chest pain. (R. 168). Dr. Smulkstys consulted Neal Coleman, M. D., a cardiologist, regarding medication. Dr. Coleman was not convinced that Wych's pain was cardiac related. (R. 169). Thallium stress testing was "essentially negative" and cardiac medications were discontinued. (R. 169, 182). Dr. Coleman diagnosed atypical chest pain, history of clean coronary arteries, and probable alcoholism. (R. 173). Dr. Coleman described the chest pain as "chest wall pain, common in people who have mitral valve prolapse." (Id.). Dr. Coleman stated that Wych's cardiomyopathy was not advanced. (R. 174). Dr. Coleman further noted that Wych did not have congestive heart failure and his heart size was not enlarged. (Id.). Wych underwent a Bruce Protocol Treadmill test which showed no cardiac symptoms. (R. 181). Wych was discharged to go home with pain medication and instructed to quit smoking. (R. 169).

In March, 1995, Wych was admitted to the Glenoaks Medical Center with a urinary tract/kidney infection. (R. 200). Dr. Smulkstys prescribed Wych antibiotics and instructed him to maintain a low salt, low cholesterol diet. (R. 201). At the time, Wych was still smoking one-half to one pack of cigarettes per day and drinking every other day. (R. 200, 203).

In October, 1995, Wych underwent another Bruce Protocol Treadmill test which also was interpreted as negative. (R. 259).

In November, 1995, C.J. Wonais, M.D. examined Wych at the request of the Bureau of Disability Determination Services. (R. 260). Wych reported symptoms of fatigue and shortness of breath on exertion, but he denied any other symptoms. (Id.). His physical examination was normal with the exception of his blood pressure, which was elevated. (R. 260-61). Dr. Wonais concluded that Wych's reported chest pain was not "cardiac in nature". (R. 261). Dr. Wonais found that Wych's heart was normal and a chest x-ray failed to show evidence of any congestive heart failure. (Id.). Dr. Wonais noted that the medications Wych took were "unusual drugs used to treat cardiomyopathy". (Id.).

From April 1996 through June 1998 Wych saw Michael F. Vosicky, M.D., a family physician, for generalized complaints of back pain, foot pain due to gout, and anxiety. (R. 297-307).

In October, 1997, Wych was treated at the emergency department of the Central Dupage Hospital for complaints of pain in his right leg. (R. 270). Wych reported that he had been painting two days previously. (Id.). At the time, Wych continued to smoke. (Id.). Wych was diagnosed with acute lumber strain. (Id.).

In March, 1999, Wych saw John R. Born, M.D., for depression and panic attacks

4

occurring four to five times per week. (R. 296). Dr. Born recommended that Wych needed a follow-up appointment regarding his symptoms of depression. (Id.). In October, 1999, Dr. Born completed a return to work form indicating that Wych could return to work without restrictions on October 14, 1999. (R. 291).

On January 11, 2000 the Department of Veteran Affairs granted Wych entitlement to individual unemployability benefits, finding Wych 80% disabled due to his depression and heart condition. (R. 68). The Veteran Affairs (VA) Rating Decision report showed that Wych's depression was evaluated as being 50% disabling from February 26, 1999. (R. 72). An evaluation of 50% is assigned for occupational and social impairments. (Id.). The report stated that there was no evidence of Wych's deficiencies in areas of work, school, family relations, judgment, thinking, or mood that would warrant an evaluation greater than 50%. (Id.). On June 3, 1999 the VA examiner stated that he did not know whether Wych was employable or not because of his depression. (R. 73). Wych's heart problems were rated as being 60% disabling since he could not "be on his feet all the time" and lift weight of 70 pounds, as required by certain jobs. (R. 74, 286). Wych was not assigned a higher evaluation because there was no evidence of the chronic congestive heart failure. (R. 74).

In May, 2000, Jean M. Alberti, Ph.D., a clinical psychologist, wrote a letter to the Bureau of Disability Determination Services indicating that he saw Wych between August 1997 and April 1998 for depression. (R. 312). Dr. Alberti noted that at that time Wych was working as a property manager, "with responsibility for much of the physical work of maintenance and repairs." (Id.). Wych terminated therapy sessions due to family dysfunction. (Id.).

5

In October, 2001, after the hearing, the ALJ obtained a consultative psychological evaluation of Wych's mental functioning. (R. 343). On the basis of Wych's report of "periods of rage reaction under stress" and "discomfort and anxiety when with other people, particularly in crowds," Joseph M. Nemeth, M.D., concluded that Wych had no impairment in his ability to understand, or remember or carry out short, simple instructions, but had marked limitations interacting appropriately with the public and responding appropriately to work processes. (R. 345-46).

### The ALJ's Legal Standard

Under the Act, a person is disabled if he or she has an "inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). To determine whether a claimant is disabled, the ALJ follows a five step analysis outlined by 20 C.F.R. § 416.920(a)-(f) and considers the following questions in order: (1) Is the claimant presently unemployed? (2) Is the claimant's impairment severe? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulation? (4) Is the claimant unable to perform her former occupation? (5) Is the claimant unable to perform any other work? An affirmative answer at either step 3 or step 5 qualifies the claimant as disabled. *Cichon v. Barnhart*, 222 F. Supp. 2d. 1019, 1024 (N.D. Ill 2002). A negative answer at any step, other than step 3, precludes a finding of disability. *Id.* at 1024. The claimant bears the burden of proof at steps 1-4. *Id.* Once the claimant shows an inability to perform past work, the burden shifts to the Commissioner to prove the claimant's ability to perform other work existing in significant numbers in the

national economy. *Id.* At the fifth and final step, the Commissioner must consider all the claimant's physical and mental impairments (Regs. § 404.1561, § 416.961), the claimant's age (Reg. §404.1563, §416.963), education (Regs. §404.1564, §416.964) and work experience (Regs. §§404.1565 and 1568, §§416.965 and 968).

## Judicial Review

Judicial review of the ALJ's decision is limited to determining whether the ALJ's findings are supported by substantial evidence or based upon legal error. *Stevenson v. Chater*, 105 F.3d 1151, 1153. (7th Cir.1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). This Court may not substitute its judgment for that of the Commissioner by reevaluating facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Estok v. Apfel*, 152 F.3d 636, 638 (7th 1998).

## Analysis

The ALJ concluded that prior to December 1998, the time when Wych's insured status for DIB expired, Wych retained the residual functional capacity (RFC) to perform the exertional requirements of medium work, which involves lifting no more than 50 pounds at a time, and frequent lifting or carrying of up to 25 pounds. (R. 19-20). Due to Wych's mental impairments, the ALJ concluded that Wych could perform unskilled work that did not involve dealing with the public. (R. 19).

Wych disputes the ALJ's determination that he was not disabled as defined in the Act as of December, 1998. In particular, Wych makes three arguments (1) that the ALJ

7

had no substantial evidence for his RFC assessment; (2) that the ALJ's credibility determination was patently wrong; and, (3) that the ALJ failed to consider evidence favorable to Wych.

1. *The lack of substantial evidence.*

Wych argues that the ALJ's decision to list Wych's physical RFC as "medium" is an error because it was not supported by any evidence. Specifically, Wych alleges that: (1) the Illinois Department of Disability Determination Services did not furnish any physical RFC; (2) the ALJ did not ask the medical expert (ME), John Cavenagh, M.D., who testified at the hearing, to provide an opinion on Wych's RFC; and, (3) the ALJ did not refer to the vocational expert's (VE) testimony at the hearing as support for his RFC determination.

Pursuant to 20 C.F.R. §404.1526(a), the Commissioner or ALJ determines if a claimant's disability meets or is medically equivalent to a disability in the Listing at 20 C.F.R. §404, Subpt. P, App. 1. This is done by comparing the claimant's symptoms, signs and laboratory findings as shown in the medical evidence in the claimant's file with the medical criteria shown for a listed impairment. It is appropriate for the ALJ to consider all the relevant evidence, and a particular physician's opinion (or a VE's opinion) regarding RFC is not entitled to any special significance. 20 C.F.R. §404.1527(e)(2).

The objective medical record supports the ALJ's finding that Wych retained an RFC to perform medium work. The ALJ referred extensively to Wych's medical records, including those medical opinions that supported and weakened his claim of disability. In particular, the ALJ considered the following: (1) records which indicated that Wych had a history of minor heart problems and that Wych had received a 80% disability rating from the Veterans Administration; (2) evidence of extensive testing Wych underwent, and Dr.

8

Coleman's opinion that the chest pain was noncardiac in nature; (3) Dr. Wonais' assessment that Wych's chest pain did not appear to be cardiac in nature; and, (4) the testimony of Dr. Cavenagh, the ME who testified at the hearing, and who indicated that stress tests in 1993 and 1995 were essentially normal and that the record did not establish significant cardiac or gout related limitations.

Wych's citation to *Green v. Apfel*, 204 F.3d 780 (7th Cir. 2000) is of no avail. In *Green*, the Court of Appeals reversed the denial of benefits by an ALJ and remanded the case so that a physician could examine either the claimant or his records to determine whether a disability existed. *Id.* at 782. Unlike this case, *Green's* ALJ did not summon a medical expert to testify whether, in his opinion, the claimant was disabled. *Id.* at 781. Rather, the ALJ "played a doctor" when he found that the claimant's complaints of "debilitating pain and limitations were disproportionate to the objective medical findings in the record." *Id.* Therefore, the Court of Appeals found that the ALJ's analysis did not provide a rational basis for the denial of benefits. This case is distinguished from *Green* because, here, the medical expert's testimony[1] provided an informed basis for determining whether Wych was disabled. Moreover, the ALJ's determination is supported by Dr. Born, Wych's primary care physician and Dr. Alberti, who treated Wych for depression from August 1997 through April 1998.

Specifically, Dr. Born's 1999 report indicated that Wych could work without any restrictions. (R. 19, 291). Dr. Alberti commented that psychotherapy had a positive effect on Wych and, despite depression, Wych was working as a part-time property manager,

---

[1] In his, testimony, Dr. Cavenagh, the medical expert, stated that Wych's coronary and gout problems were not documented in the record as causing ongoing limitations. (R. 411).

9

"with responsibility for much of the physical work of maintenance and repairs." (R. 312). The fact that no physician indicated Wych had greater physical limitations provides substantial evidence supporting the ALJ's determination that Wych can perform work at medium level.

Wych next argues that the ALJ failed to discuss all of the evidence concerning Wych's mental problem disclosed by the psychiatrist, Dr. Nemeth, who examined Wych after the hearing.[2] Although the ALJ did not discuss every piece of evidence of Dr. Nemeth's report that he took into consideration in making his determination, an ALJ is not required to do so. *Diaz v. Chater*, 55 F. 3d. 300, 308 (7th Cir. 1995); *Garfield v. Schweiker*, 732 F.2d 605, 609 (7th Cir. 1984). Dr. Nemeth's finding that Wych would have difficulties following instructions and dealing with the public supports the ALJ's restriction on Wych's RFC. We are confident that the ALJ has "built an accurate and logical bridge from the evidence to his conclusion," *Clifford v. Apfel*, 227 F.3d 863, 867 (7th Cir. 2000), thus allowing the court to track the ALJ's reasoning and assuring us that the ALJ considered the important evidence before concluding that Wych could perform medium work.

2.  *The ALJ's credibility determination*

Wych claims that the ALJ's credibility assessment is patently wrong. First, Wych argues that the ALJ did not have substantial evidence to fault Wych for failure to follow his physician's advice to avoid coffee, tea, alcohol, tobacco and to lose weight. Next, Wych alleges that the ALJ mischaracterized the record when he stated that Wych had not seen

---

[2] Specifically, Wych argues that the ALJ discounted Dr. Nemeth's conclusions because they only applied to the period close to the date of the examination – which occurred after the hearing. However, as we note below, Dr. Nemeth's conclusions were consistent with those of doctors who examined Wych at earlier periods of time.

10

a cardiologist since 1992. Finally, Wych challenges the ALJ's finding that Wych's testimony was inconsistent and imprecise and not supported by substantial evidence.

"We afford an ALJ's credibility determination special deference because the ALJ is in the best position to see and hear the witness and determine credibility." *Shramek v. Apfel*, 226 F. 3d 809, 811 (7th Cir. 2000). "We will not normally disturb an ALJ's credibility determinations unless they are patently wrong." *Zurwaski v. Halter*, 245 F. 3d 881, 887 (7th Cir. 2001). When "the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result," however, we cannot uphold the ALJ's decision. *Shramek*, 226 F.3d at 881. The ALJ's credibility determination must include reasons for the finding that are supported by record evidence and must be specific enough to show the weight the ALJ gave to the claimant's testimony. *Zurwaski*, 245 F.3d at 887 (citing Social Security Ruling 96-7p).

Here, the ALJ created an accurate and logical bridge between the evidence and his conclusion that Wych's complaints of pain were not entirely credible. Initially, the ALJ explained that a "medical record demonstrating an individual's attempts to seek medical treatment for pain or other symptoms and to follow that treatment once it is prescribed lends support to an individual's allegations of intense pain or other symptoms for the purposes of judging the credibility of individual's statements." (R. 18). Further, the ALJ stated "[o]n the other hand, the individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints." (Id.). Then the ALJ pointed out that Wych's failure to follow his treating physician's recommendations to abstain from coffee, tea, alcohol and tobacco made Wych's complaints less credible. (Id.).

The ALJ based his assessment on the following evidence: (1) Wych's treatment

11

history, which included neither visits to a cardiologist nor ongoing mental health treatment; (2) the effectiveness of medication and therapy; (3) statements made by Wych's physicians; (4) the lack of limitations placed on Wych by his treating physicians; and, (5) Wych's failure to follow his physician's instructions that he stopped smoking and drinking and lose weight. All these factors are appropriate regulatory factors for the ALJ to consider in evaluating Wych's credibility. See SSR 96-7. Wych argues that the ALJ's credibility determination must be based on evidence in the record, and demonstrate how the claimant's alleged failure to comply with the treating physician's recommendations affected his condition. See Steele v. Barnhart, 290 F.3d 936, 941 (7th Cir. 2002). Although the ALJ does not discuss how abstaining from coffee, tea, alcohol and tobacco would restore Wych's ability to work, the ALJ does not conclude that failure to abstain was a source of Wych's distress and illness. Rather, the ALJ draws the inference that Wych's allegations are less credible because Wych's attempts to obtain relief from pain were not consistent with the level of his complaints.

Second, the ALJ identified numerous statements by Wych that were inconsistent with the record and that proved Wych's failure to so abstain. For example, on May 17, 2000, Wych completed the Pain Questionnaire provided by the Bureau of Disability Determination Services. (R. 113). Wych's response to the question "Please describe any other things done to relieve the pain" was "I quit smoking and having beer/wine 10 years ago, I try to eat all the right food." However, a September, 1993 report from Wych's admission to the Glenoaks Hospital and Medical Center indicates that Wych "smoked approximately one-half pack to one pack per day for the last 20 years." (R. 175). The

12

Glenoaks Hospital and Medical Center report provides further support that Wych was not honest about his smoking; it has a notation from March, 1995 which reads "smokes ½ to 1 pack per day for the last 20 years" (R. 206). Moreover, Exhibit 23F contains a February 3, 1998 note, which states [Wych]"stopped smoking 5 weeks ago." (R. 225).

Finally, the ALJ properly considered Wych's failure to seek the assistance of a specialist for the alleged heart problem. See 20 C.F.R. §404.1529(c)(3)(v). Wych failed to seek the assistance of a specialist because he refused to go to the VA hospital. (R. 18). The record does not support Wych's allegation that his "ongoing treatment" with Dr. Born, a family physician, undermined the ALJ's suggestion that Wych failed to consult a cardiologist. Dr. Born's notes demonstrate that Wych first sought treatment in April, 1996 for pain in his toe. (R. 307). Wych met with Dr. Born in June and twice in July 1996 for toe pain; in September, 1996 for right knee pain; in February, 1997 for low back pain (R. 302); and in May, 1997 for left arm pain and increased anxiety. (R. 299, 301). On March 8, 1998 Wych complained of back pain. (R. 289). In June, 1998, Wych saw Dr. Born for a medication follow-up. (R. 297). The next visit took place in February, 1999, when Wych sought a letter to support his disability claims. (R. 296). In his March, 1999 letter, Dr. Born indicated that he evaluated Wych's psychiatric condition. (R. 293). Thus, the record proves that Dr. Born never treated Wych for his alleged heart problems. Therefore, we believe that substantial evidence exists for the ALJ's credibility determination. Accordingly, we do not find the credibility determination of the ALJ to be patently wrong.

3.  *Failure to consider evidence favorable to the plaintiff.*

Wych alleges that in his decision, the ALJ did not consider Wych's long history of

cardiomyopathy and mitral valve prolapse. We are mindful that the ALJ has an obligation to develop a full and fair record. *Thompson v. Sullivan*, 933 F.2d 581, 585 (7th Cir. 1991). However, the ALJ need not provide a complete written evaluation of every piece of testimony or evidence. *Diaz v. Chater*, 55 F.3d. 300, 308 (7th Cir. 1995). Although the ALJ did not analyze all the details of Wych's history of cardiomyopathy and mitral valve prolapse, the ALJ does discuss these impairments. (R. 17). Moreover, the ALJ considered and discussed Dr. Cavenagh's testimony that "neither the coronary disease nor the gouty disease are documented as causing ongoing inability to function." (R. 17, 412). Therefore, we don't find that the ALJ failed to discuss Wych's impairments of cardiomyopathy and mitral valve prolapse.

Next, Wych asserts that the ALJ did not address Wych's obesity and did not ask the ME to address this issue at the hearing. Generally, where the medical evidence is incomplete or unclear, an ALJ can order consultative examination, but a reasonable attempt should be made to obtain medical evidence from the treating sources first. 42 USC §423(d)(5)(B). See consultative examination regulation, 20 CFR §§404.1519g, 416.919g. However, the ALJ is not required to order consultative examination on the basis of mere allegation of impairment. 42 USC §423(d)(5)(A). A claimant is required to bring to the SSA's "attention everything that shows that you are ... disabled." 20 C.F.R. §404.1512(a). Thus, the claimant must provide medical and other evidence that the SSA can use to reach conclusions about his or her medical impairments and their effect on the claimant's ability to work. 20 C.F.R. §404.1512(a). "It is the claimant who bears the responsibility of providing medical evidence of an impairment." *Howell v. Sullivan*, 950

14

F.2d. 343, 348 (7th Cir. 1991)(citing Reg. §404.1504 and 404.1508) (court found that the ALJ was under no duty to order psychological consultation to determine whether claimant was disabled by nonexertional impairments of alcoholism and depression absent record medical evidence supporting those impairments). Since there is no objective medical evidence that Wych suffered from obesity and Wych himself has not asserted disability on the basis of his weight, it was not an error for the ALJ to fail to consider Wych's obesity.

Finally, Wych argues that the ALJ has dismissed the severity of his mental impairments. Particularly, Wych takes issue with the ALJ's noting that Wych stopped treatment with Drs. Alberti and Ballow despite the fact that psychotherapy and medication were helping with his mental impairments. Further, Wych states that the ALJ's determination is not supported by substantial evidence because he referred to a multi-page exhibit without specifying the point he was making. We disagree. First, the ALJ considered the testimony of Wych and his wife who stated that in 1998 Wych was having panic attacks, during which he got verbal, vulgar, and lashed out at others. The ALJ noted that the record showed continuing treatment for anxiety and depression.

Further, the ALJ considered the notes of Drs. Alberti and Ballou who treated Wych for major depression and alcohol abuse between August 1997 and June 1998. (R. 18, 19, 312). In his notes, Dr. Alberti commented on Wych's treatment: "Psychotherapy had a positive effect on him, as confirmed by Dr. Ballou." (Id.). Wych "was working as a part-time property manager, with responsibility for much of the physical work of maintenance and repairs" (R. 18). Drs. Alberti and Ballou's notes further reflect that in November 1997, Wych reported Zoloft "has been helpful and has been noted by friends and co-workers" (R.

15

19, 337).³ The record shows that Wych's sleeping and energy were improved, he had fewer crying spells and decreased anhedonia, and he was able to go out and enjoy dinner and movie with his wife. (Id.). Having discussed the record, the ALJ concluded that Wych's termination of treatment despite pronounced positive effects undermined the weight of his complaints. (Id.). We are confident that the ALJ considered the important evidence of Wych's mental impairments and "built an accurate and logical bridge from the evidence to his conclusion." *Clifford v. Apfel*, 227 F3d, 863, 867 (7th Cir. 2000).

Furthermore, Wych challenges the ALJ's consideration of Dr. Nemeth's post-hearing psychiatric evaluation of Wych. Wych correctly states that Dr. Nemeth's report referred to Wych's apprehension, suffering from depression, sad thoughts, anxiety, rage reaction, mood swings, and a history of suicidal ideation, insomnia and poor concentration. (R. 343-44). Dr. Nemeth's findings are consistent with the record, which the ALJ discussed earlier in his opinion. (R. 17-19). Wych claims that the ALJ summarily dismissed Dr. Nemeth's report when the ALJ concluded that the report related only to Wych's present condition. (R. 19). We disagree. Indeed, the ALJ notes that Dr. Nemeth's report relates only to Wych's present condition. This, however, does not undermine the primary purpose of the post-hearing evaluation. The ALJ did not use Dr. Nemeth's evaluation to support his finding that Wych was not disabled in 1998. Rather, Dr. Nemeth's report provided the ALJ an informed basis to make an assessment of Wych's present RFC. Having considered Dr. Nemeth's finding that Wych would have difficulties following instructions and dealing with

---

³ Wych challenges this as "putative improvements" which the ALJ felt permitted the claimant to work. The ALJ, however, did not make such finding and Wych's comment is irrelevant.

16

the public, the ALJ reasonably concluded that Wych's retained RFC was limited by nonexertional limitations resulting from his mental impairments to unskilled jobs that do not involve contact with the public. Therefore, we find that the ALJ's consideration of Dr. Nemeth's report is consistent with its purpose and Wych's allegations that the ALJ wasted tax-payer money on post-hearing psychiatric examination is simply inappropriate.

Lastly, Wych argues that the ALJ "does not take claimant's major depression seriously" and does not explain how it would reduce his ability to function in the work place, get along with superiors and co-workers, and follow instructions. The ALJ, however, did not need to do so because Dr. Nemeth's report explicitly stated that Wych had no limitation with regards to understanding, remembering, and carrying out simple instructions, and had only slight limitations in his ability to get along with co-workers and superiors. (R. 345-46). In his report, Dr. Nemeth identified that Wych had marked limitations dealing with the public and responding to work pressures. (Id.). We find that the ALJ did not err in his RFC assessment because he appropriately incorporated these limitations.

In light of previously discussed evidence, the court finds that the ALJ's findings that Wych retained the RFC to perform unskilled medium work is supported by substantial evidence. Accordingly, we affirm the decision of the ALJ granting defendant's motion for summary judgment, and denying plaintiff's motion to reverse the final decision of the Commissioner of Social Security. It is so ordered.

ENTER:

**MICHAEL T. MASON**
**United States Magistrate Judge**

Dated: July 10, 2003